IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHELLE BYBEE, ) | |
| ) | Case No.  CV-05-141-E-BLW |
| Plaintiff, ) | |
| ) | **MEMORANDUM DECISION** |
| v. ) | **AND ORDER** |
| ) | |
| TARGET CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## INTRODUCTION

The Court has before it Plaintiff's Motion for Partial Summary Judgment (Docket No. 25), Defendant's Motion for Summary Judgment (Docket No. 30), and Plaintiff's Objection and Motion to Strike (Docket No. 40). The Court heard oral argument on the motions on October 25, 2006 and now issues the following decision.

## BACKGROUND

Plaintiff, Michelle Bybee, began working for Defendant, Target Corporation ("Target") in October 2001.  Target has what it calls Corrective Action Guidelines for use in addressing employee performance and disciplinary issues.

On June 21, 2004, Bybee received a Corrective Action in the form of a written counseling for excessive absenteeism/tardiness in violation of Target's

attendance policy. The Corrective Action stated that "[t]he attendance policy for T1082 states that 3 absences or tardies in a rolling 90 day period is a written counseling. You left early on April 29, May 7, June 9, 10, 11, 15, 17." (See Affidavit of Kimberly Evans Ross, Ex. B, Docket No. 30). Thus, Bybee received a Corrective Action based on seven absences/tardies within a 90-day rolling period.

On October 12, 2004, Bybee received a second Corrective Action in the form of a written counseling for "Inability to Perform Duties in a Positive and Respectful Manner Consistent with Target Corporation Brand Expectations." (See Affidavit of Kimberly Evans Ross, Ex. C, Docket No. 30).

On December 10, 2004, Bybee received a third Corrective Action. This Corrective Action was marked as a final warning as opposed to a written counseling. As was the case with the October 12 Corrective Action, this Corrective Action was for "Inability to Perform Duties in a Positive and Respectful Manner Consistent with Target Corporation Brand Expectations." (See Affidavit of Kimberly Evans Ross, Ex. D, Docket No. 30).

As a result of receiving three Corrective Actions within a twelve-month period, on December 17, 2004, Bybee received another Corrective Action in the form of a final warning, stating:

> This corrective action is being issued for the following Target Brand outlined reason: Multiple Violations. Any team member who receives three corrective action steps

> in a rolling one-year period of time will receive a Final
> Warning. A fourth corrective action step in the
> subsequent 12 months will result in termination.
>
> Michelle, you received a Written Counseling on 6/21/04,
> 10/12/04, and 12/17/04. This is three Corrective Action
> steps. Any additional corrective action step in the next
> 12 months will result in termination.

(See Affidavit of Kimberly Evans Ross, Ex. E, Docket No. 30).

On January 27, 2005, Bybee was tardy in reporting to work due to a power outage. On February 14, 2005, Bybee was absent from work because her daughter was sick. On February 23, 2005, Bybee left work early because her daughter was sick and had begun vomiting. On February 25, 2005, Bybee left work early again because her daughter was vomiting again. On February 28, 2005, Bybee was absent from work because her daughter was still sick.

On March 1, 2005, Target terminated Bybee. (See Affidavit of Kimberly Evans Ross, Ex. G, Docket No. 30). The final Corrective Action Report given to Bybee on her termination date stated that Bybee had not met the following standards of performance:

> Excessive Absenteeism/Tardiness
> Excessive unauthorized absences from work, reporting to
> work late, taking excessively long breaks, or leaving
> work early without authorization. Absences
> compensated by any short or long-term benefit plan do
> not count unless specified in a formal
> attendance/tardiness policy. A more restrictive policy in
> effect will override this provision. FMLA-qualified

absences do not count toward this policy.

(See Affidavit of Counsel in Support of Plaintiff's Motion for Summary Judgment, Ex. D (Ex. 18 to Deposition of John Hoxie) (Docket No. 28).  The final Corrective Action Report also had a category entitled "Problem Definition/Suggestions for Improvement.  Below are areas of your performance which need to improve to a 'satisfactory' level or better and suggestions for improving your performance."  Below that statement, the report stated as follows:

> The following is a list of documented absenteeism/tardiness
> January 27, 2005 - Tardy
> February 14, 1005 - Called in for Jewelry boat shift
> February 23, 2005 - Left Early
> February 25, 2005, Left Early
> February 28, 2005 - Called in for Jewelry boat shift
>
> If you are on a Final Warning and have three absences, tardies, or a combination of both within the following 90-days, it is involuntary Termination.  On December 17, 2004 you were notified that any additional corrective action steps within the next 12 months will result in termination.

(See Affidavit of Counsel in Support of Plaintiff's Motion for Summary Judgment, Ex. D (Ex. 18 to Deposition of John Hoxie) (Docket No. 28)).

On August 29, 2005, Bybee filed an Amended Complaint against Target alleging violations of the Family and Medical Leave Act ("FMLA").  Target now moves for summary judgment and Bybee moves for partial summary judgment as to liability.

# ANALYSIS

## I. Summary Judgment Standard

Summary judgment is proper when there is an absence of any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Evidence must be viewed in the light most favorable to the non-moving party. *Anderson* 477 U.S. at 255. Once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to produce evidence sufficient to support a jury verdict in its favor. *Id.* at 256-57. In meeting its burden, the non-moving party must go beyond the pleadings and show "by affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

## II. Cross Motions for Summary Judgment on FMLA Claim

The FMLA allows an employee covered by the FMLA to take up to a total of twelve weeks of leave during any twelve month period "in order to care for the spouse or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1). The Court finds, and the parties agree, that Bybee was an eligible employee, and that

Target was a covered employer, within the meaning of the FMLA.  See 29 U.S.C. § 2611(2)(A) and (4)(A)(I).

The Ninth Circuit has pointedly stated that the "analysis is fairly uncomplicated.  Much as it should be obvious that the FMLA is not implicated and does not protect an employee against disciplinary action based upon absences if those absences are not taken for one of the reasons enumerated in the Act, the FMLA is implicated and does protect an employee against disciplinary action based on her absences if those absences are taken for one of the Act's enumerated reasons."  *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001) (internal quotations and citations omitted).  "The regulation promulgated by the Department of Labor, 29 C.F.R. 825.220(c) plainly prohibits the use of FMLA-protected leave as a negative factor in an employment decision."  *Id.*  Thus, in *Bachelder*, the Ninth Circuit stated that in order to prevail on her claim, Bachelder, the plaintiff, "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her."  *Id.*  A plaintiff  "can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both."  *Id.*

In this case, Target unequivocally concedes that Bybee's February 25 and February 28, 2005 absences were protected by the FMLA.  In its Supplemental Response to Request for Admission No. 40, Target states as follows:

> **REQUEST FOR ADMISSION NO. 40**: Admit that on February 14, February 23, February 25 and February 28, 2005, Michelle Bybee was entitled to leave under the Family Medical Leave Act.
>
> **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 40**: Denied that Michelle Bybee was entitled to leave under the FMLA in connection with her absences on February 14 and February 23, 2005. *Admitted that Michelle Bybee was entitled to leave under the FMLA in connection with her absences on February 25, and February 28, 2005.*

(See Affidavit of Counsel in Response to Defendant's Motion for Summary Judgment, Ex. A, p. 6, Docket No. 34) (italicized emphasis added)). Thus, if Bybee's February 25 and February 28 absences/tardies constituted a negative factor in Target's decision to terminate Bybee, Bybee must prevail on her claim.

Target contends that it did not even consider Bybee's February 25 and February 28 absences/tardies in its decision to terminate Bybee. In support of its contention, Target suggests that Bybee's December 17, 2004 Final Corrective Action subjected Bybee to termination in the event she incurred any form of Corrective Action within the following twelve months. Bybee's December 17, 2004 Final Corrective Action stated as follows:

> This corrective action is being issued for the following Target Brand outlined reason: Multiple Violations. Any team member who receives three corrective action steps in a rolling one-year period of time will receive a Final Warning. A fourth corrective action step in the subsequent 12 months will result in termination.

> Michelle, you received a Written Counseling on 6/21/04, 10/12/04, and 12/17/04. This is three Corrective Action steps. Any additional corrective action step in the next 12 months will result in termination.

(See Affidavit of Kimberly Evans Ross, Ex. E, Docket No. 30).

Target also suggests that based on Target policy, three absences/tardies within a rolling 90-day period automatically results in a Corrective Action. This policy is referenced in Bybee's June 21, 2004 Corrective Action, where Target states that "[t]he attendance policy for T1082 states that 3 absences or tardies in a rolling 90 day period is a written counseling." (See Affidavit of Kimberly Evans Ross, Ex. B, Docket No. 30).

Target then points out that Bybee's January 27, February 14 and February 23, 2005 absences/tardies constituted three absences/tardies within a rolling 90-day period. Target therefore contends that these three absences/tardies, without consideration of the February 25 and February 28, 2005 FMLA protected absences/tardies, automatically triggered another Corrective Action, which resulted in a non-discretionary termination of Bybee.

However, there is also evidence in the record contradicting Target's contention that three absences/tardies automatically trigger a Corrective Action pursuant to Target policy. Target's past performance in dealing with Bybee's absences/tardies, and Target's stated reason for terminating Bybee, are telling here.

With respect to Target's past performance, on June 21, 2004, Target issued Bybee a Corrective Action in the form of a written counseling for excessive absenteeism/tardiness in violation of Target's attendance policy. As noted above, the June 21 Corrective Action stated that "[t]he attendance policy for T1082 states that 3 absences or tardies in a rolling 90 day period is a written counseling." (See Affidavit of Kimberly Evans Ross, Ex. B, Docket No. 30). However, the Corrective Action goes on to state: "You left early on April 29, May 7, June 9, 10, 11, 15, 17." Id. Thus, it appears that the first three absences/tardies, April 29, May 7 and June 9, did not automatically trigger a Corrective Action. Instead, Target waited until Bybee had incurred seven absences/tardies before it issued the Corrective Action. This suggests that Corrective Actions are not automatic – they are issued by Target for a stated reason.

Moreover, Target states in its statement of undisputed facts that the reason for Bybee's termination was "excessive absenteeism based on Plaintiff's absences/tardies on January 27, February 14, February 23, February 25, and February 28, 2005, in violation of the store's attendance policy and Plaintiff's December 17, 2004 Final Warning Corrective Action." (See Memorandum in Support of Defendant's Motion for Summary Judgment, p. 4, Docket No. 30).[1]

---

[1] The Court would note that Defendants' Statement of Undisputed Facts seems to overstate the record in a manner adverse to Target by almost unequivocally stating that Target based its decision to terminate Bybee on all five

Additionally, Bybee's final Corrective Action Report listed all five of Bybee's absences/tardies, including the February 25 and February 28 absences/tardies, as Bybee's problem areas. (See Affidavit of Counsel in Support of Plaintiff's Motion for Summary Judgment, Ex. D (Ex. 18 to Deposition of John Hoxie) (Docket No. 28)). These statements suggest that three absences or tardies in a rolling 90 day period do not automatically constitute a Corrective Action.

Under these circumstances, the Court concludes that there is a genuine issue of material fact as to whether Target considered Bybee's February 25 and February 28, 2005 absences/tardies as a negative factor in its decision to terminate Bybee. The analysis does not stop here, however. There is no dispute that Target considered Bybee's January 27, February 14 and February 23 absences/tardies in its decision to terminate Bybee. Thus, Target violated the FMLA if the January 27, February 14 and/or February 23 absences/tardies are protected absences/tardies.

Bybee does not argue that the January 27 and February 14 absences/tardies

---

of Bybee's absences/tardies. However, because a statement of undisputed facts is not a pleading, deposition, answer to interrogatories, admission or affidavit, the Court must turn to the actual evidence supporting the statement when making a decision on summary judgment. *See* Fed. R. Civ. P. 56(c). In this case, the evidence supporting Defendants' statement is more ambiguous than the statement and does not clearly state that Bybee's termination was based on all five absences/tardies. (See Affidavit of Kimberly Evans Ross, Ex. G, Docket No. 30). For future reference, the Court would caution counsel and the parties to be sure that statements of undisputed fact closely track with the evidence supporting such statements.

were FMLA protected.  Bybee does contend, however, that the February 23 absence was FMLA protected.  Both parties agree that in order for the February 23 absence to qualify under the FMLA, Bybee's daughter must have had a "serious health condition."  The parties also agree that to qualify as a "serious health condition," Bybee's daughter's illness must have involved "[a] period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days. . . ."  29 C.F.R. § 825.144(a).

Defendants contend that Bybee's February 23 absence is not FMLA protected because Bybee took her daughter to daycare on February.  Although the parties disagree as to whether attending daycare disrupts the consecutive three-day period for purposes of determining incapacity, the Court need not decide that issue at this time because there is a dispute over whether Bybee's daughter even went to daycare on February 24.  The record before the Court indicates that Bybee initially recalled that she took her daughter to daycare on February 24 (See Affidavit of Kimberly Evans Ross, Ex. A at 164:25 - 165:11; 168:23-169:6, Docket No. 30).  However, Bybee's daycare provider testified and submitted a daily record indicating that Bybee's daughter was not at daycare on February 24 (See Affidavit of Kayrene Kelley, p.2, Docket No. 35).

Accordingly, there is a genuine issue of material fact as to whether Bybee's

February 23 absence was FMLA protected, which prevents summary judgment in favor of either party.

### III.   Motion to Strike

Bybee moves to strike the Supplemental Affidavit of Adrian Malatesta in Support of Defendant's motion for Summary Judgment.  By way of affidavit, Malatesta, a Human Resources Representative of Target, introduces records maintained by Target in connection with Bybee's unemployment claim filed with the Idaho Department of Commerce and Labor.  Target points to the documents as supporting its argument that Bybee was terminated because her January 27, February 14 and February 23 absences automatically triggered another Corrective Action which, in turn, required her termination.  Target argues that once Bybee accumulated three absences/tardies, she was to be terminated upon her next day worked.  This turned out to be March 1, 2005 because she left early on February 25 and called in sick for her February 28 shift.

The Target documents do not resolve the question of whether Bybee's January 27, February 14 and February 23 absences automatically triggered another Corrective Action.  The documents show that, in connection with Bybee's unemployment claim, the Idaho Department of Commerce and Labor asked Target the following question:

> Michelle [Bybee] was fired for violating the policy for having 3

> occurrences in a 30 day period, however, according to our records, was absent on 2/14/05, left early on 2/23/05 and 2/25/05, if the above statement is correct, why wasn't she fired after her 3rd occurrence on 2/25/05 when she left early?

(See Supplemental Affidavit in Support of Defendant's motion for Summary Judgment, Ex. A, TS00222, Docket No. 39).  Target's HR personnel responded to that question as follows:

> "Michelle was terminated on her next day worked.  She could not be terminated sooner because she had called in for her next shift on 2/28/05.  Michelle could not be terminated on 2/25/05 because she had left early and was not on the premisses."

(See Supplemental Affidavit in Support of Defendant's motion for Summary Judgment, Ex. A, TS00223, Docket No. 39).

One of two conclusions can be drawn from these statements.  The first conclusion would be that Target considered February 25 to be Bybee's third absence/tardy following her final warning – which is why Target stated that Bybee's "next shift" was February 28.  In that case, even if three absences/tardies automatically triggered a Corrective Action, the fact that Target considered the February 25 absence/tardy as one of those absences/tardies subjects Target to liability because it has admitted that the February 25 absence/tardy was FMLA protected.

The second possible conclusion assumes that the question asked to Target's HR personnel misstated the facts.  The question fails to reference the January 27

tardy and assumes that Bybee's first three absences/tardies following her December 17 final warning were the February 14, February 23 and February 25 absences/tardies. Assuming the question misstated the facts, the Court recognizes Target's argument to be that the January 27, February 14, and February 23 absences/tardies violated Target's policy. If that is the case, then Bybee's next shift following her third absence/tardy was her February 25 shift, not the February 28 shift. In that case, Target's argument that she was terminated on her next day at work following the automatically triggered Corrective Action still fails. Although Bybee left work early on February 25, it is undisputed that she was at work that day, and Target could have terminated her on that day. However, Target did not terminate her until March 1.

Under either assumption, the documents offered in the Malatesta affidavit do not support a finding that the January 17, February 14 and February 23 absences automatically triggered a Corrective Action – which, in turn, triggered Bybee's termination. Accordingly, even if the Court considered the evidence in the affidavit, it would make no difference to the Court's decision. Therefore, the Court will deem moot the motion to strike.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgement (Docket No. 25) shall be, and the same is hereby,

DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Docket No. 30) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED THAT Plaintiff's Objection and Motion to Strike (Docket No. 40) shall be, and the same is hereby, DEEMED MOOT.

IT IS FURTHER ORDERED that the Clerk of the Court shall set this case for a status conference for the purpose of setting the case for trial.

DATED:  **November 22, 2006**

Honorable B. Lynn Winmill
Chief U. S. District Judge